Jimmy RIOJAS and Gary Martin,
Plaintiffs,

v.

John W. TURNER, Warden, Utah State
Prison, Defendant.

Edward KANOSH, Plaintiff,

v.

John W. TURNER, Warden, Utah State
Prison, Defendant.

Chester B. BROWN, Plaintiff,

v.

John W. TURNER, Warden, Utah State
Prison, Defendant.

William WHETTON, Plaintiff,

v.

John W. TURNER, Warden, Utah State
Prison, Defendant.

Nos. C-300, 306, 248 and 213-69.

United States District Court
D. Utah, C. D.

Oct. 3, 1969.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

The first two cases mentioned above were initiated by unverified letters from prisoners in the Utah State Prison, leave was granted by the Chief Judge to file these letters in forma pauperis as petitions for writs of habeas corpus, and they were docketed as habeas corpus cases and assigned to me by our automatic assignment system. The latter two cases involve letters similarly addressed and unverified, asking for further relief by way of rehearings or otherwise in matters already assigned to me.

Civil Number 300-69, Riojas and Martin v. Turner, was initiated by the following letter to the Chief Judge:

We Gary Martin and Jimmy Riojas are writing in regard to our parole violation when we were violated with out a lawyer being present at our board hearing. I, Jimmy Riojas did receive a three year date in April 67, I also was convicted of a new charge. We have heard that you have stated that this is not constitutional. Since then I have sen people released from the state prison who were faced with the circumstances that we are faced with. We would appreciate any and all advice to this matter that you could give us. We would appreciate it if you would

appoint an attorney to come out here to the prison and talk to us.

Number C 306–69, Kanosh v. Turner, was initiated by the following letter similarly addressed:

I am writing to you in regards to an inmate at the Utah State Prison, who is illiterate, and who I believe has had his Constitutional Rights violated.

His name is Edward Kanosh, USP #12121.

He was violated on the grounds, "using intoxicants in violation of the order of the Board of Pardons," on February 5th, 1969, without counsel, due to lack of funds and knowledge.

Neither he nor myself are very well acquainted with the law, nor have the law book available.

He would appreciate a chance to consult with an attorney, but he is still without funds to retain one.

We place our faith in the justice of your court.

Based upon these letters on August 22, and September 2, 1969, respectively, the Chief Judge entered orders in the following terms:

The Court having examined the application for Writ of Habeas Corpus filed by the above named petitioner, together with the Motion for Leave to Proceed in *Forma Pauperis* and the required affidavit,

IT IS ORDERED that petitioner be, and he is hereby authorized to proceed in *forma pauperis*, and the Clerk is directed to file forthwith the petitioner's application without prepayment of fees and costs or security therefor.

In C 248–69, Brown v. Turner, on August 26, 1969, after an evidentiary hearing, I entered findings of fact, conclusions of law and judgment determining that petitioner's claim with respect to one sentence was moot since he already had served it and that as to the other sentence under attack, state court findings that his plea was voluntary were fully supported by the evidence, that there was no evidence that the plea was not intelligently and advisedly made and that plaintiff was not denied the right to counsel, but rather was represented effectively by counsel. Plaintiff's appeal of this decision is now pending in the Court of Appeals.

The plaintiff, Brown, has now written the following letter to the Chief Judge asserting new grounds for relief, and this letter has been referred to me pursuant to the assignment rule:

Would you see Raymond Berry about making an order to release me. I was not given a hearing at my Parole Revocation. Judge Sherman Christensen did not consider that when I was before him on a Writ of Habeas Corpus. If you want some information would you please Mr. Raymond Berry, my attorney, which was appointed by you to represent me. I should of been released with the first fellows you granted. I am ignorant of the laws. I don't have no one to help me. I also would like to talk private with you on some matters in the prison hear on. If you care to send some one I can give you the true facts about anything and everything hear in this Prison. I been hear 3½ years on a 1 to 10. [Illegible] * * * which I was forced to plead guilty to or be tried on a 5 to life sentence they say I did. I was under the influence of narcotics when they charged me with this crime. And another fellow would like to see you on a [illegible] if you would send one down. His name is Randel Bryant who has been hear over 5 years and he could not have had a fair trial as he had a stroke and is unable to converse with anyone. Thanking you, Chester Brown.

In C 213–69, William Whetton v. John W. Turner, Warden, I held on the original petition that without a showing of the exhaustion of state remedies or any pending appeal or habeas corpus proceeding either in the state or this court, I had no authority to order the state to provide him with a copy of his trial transcript. No appeal was taken from this ruling within the time required by law, or at all.

Under date of September 22, 1969, the plaintiff has written the following letter on the subject to the Chief Judge:·

Repeated attempts to obtain a copy of my "trial transcript" have resulted in repeated failures.

Attached is a copy of the "denial" of the Supreme Court of my "Petition for a writ of mandamus" requiring the Third District Court (Salt Lake County, Utah) to show cause, if any it had, why I should not be granted a "transcript" of my "trial" consistent with the holding of the Supreme Court in Gardner v. California, 37 U.S. Law Week 4098 [393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601] (Jan. 21, 1969).

Inasmuch as a person of means (financial means) would be able to support his contentions in a Habeas Corpus or Coram Nobis proceeding by the use of his "Trial Transcript" it would seem that the Denial of such subject—matter to me an indigent defendant, would be condemned as the "invidious discrimination" condemned in Griffin v. Illinois, 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891] (1956) and Long v. District Court, 385 U.S. 192 [87 S.Ct. 362, 17 L.Ed.2d 290] (1966).

I feel compelled to seek your aid in causing the "transcript" to be furnished to me under the Federal Constitutional Guarantee of "Equal Protection of the Laws" and in the interest of justice. Especially in view of the fact that I am imprisoned for a capital offense—which I am sure the "transcript" will show a total absence of malice of any kind and other facts which are fatal to the validity of my conviction.

I shall be most sincerely grateful for your favorable consideration in regard to the forestated "transcript" being prepared and forwarded to me. Thank you.

Respectfully submitted,
William Whetton.

■ I had already pointed out in my memorandum decision on the original petition that, unlike the situation discussed in Gardner v. California, 393 U.S. 367, 368, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969), the Utah statute governing an original petition for habeas corpus where no previous petition has been filed requires a statement of the cause or pretense of petitioner's illegal restraint "according to the best information of the plaintiff". Utah R.Civ.Pro. 65B(f) (1). On mandamus, rather than in connection with a habeas corpus proceeding, a denial by the State Supreme Court of such relief without basis other than a hope that a transcript would show that evidence of malice was lacking at his trial is not sufficient to authorize this court to grant relief.

The accumulation of such matters and particularly the above-entitled cases seem to make necessary the statement, or restatement, of certain principles and applications:

1. The rule of the Judicial Council of the Tenth Circuit with reference to the division of the business of the court between the two judges in the District of Utah provides for the automatic assignment on irregular sequence between the judges of civil cases, including habeas corpus matters, and litigants cannot select the judges they wish to decide their cases any more than the judges could select even if they were so inclined the litigants whose causes they are to try.

2. On matters assigned to one of the judges, the other judge has no judicial power or control, and if an appeal from the ruling of the assigned judge is to be taken, it cannot be to the other judge but must be to the United States Court of Appeals for the Tenth Circuit within the time provided by law from the final judgment either granting or denying a writ of habeas corpus.

■ 3. That one of the judges entertains a different view of the governing law than that held by a litigant or another judge is not in any particular case grounds for disqualification. Personal bias or prejudice such as would disqualify a judge does not include bias based

on a previously expressed view of the law, or based on a previous decision against a litigant or an adverse ruling during the course of litigation. See Knoll v. Socony Mobil Oil Co., 369 F.2d 425 (10th Cir. 1966). Each judge was appointed and holds his office to exercise his own independent judicial judgment, subject only to appeal to superior courts as provided by law. The Court of Appeals, through its decisions upon timely appeal, will correct prejudicial error and where differences of opinion may exist between the judges will properly resolve those differences by its controlling rulings.

The rule of the Judicial Council of the Tenth Circuit which has also been mentioned with reference to the division of business between the two judges provides in effect that if a complaint is submitted with a request for leave to file in forma pauperis, before such filing the case shall be presented by the clerk to the Chief Judge for a ruling upon such request. If disallowed, the case will be lodged in the clerk's records but not filed; if allowed, it will be filed and assigned in due course.

 In a number of prior cases I have considered that the acceptance of a case by the Chief Judge as one properly for forma pauperis proceedings commended that I pursue the matter further by appointment of counsel or otherwise unless lack of any substantive merit affirmatively appeared on the face of the application. However, the large number of informal applications which have been disclosed to be wholly without merit and the great amount of time which has been necessitated by the making of investigations beyond the record have now led me to conclude that a degree of formal compliance not only should be but, indeed, must under the law be a prerequisite to habeas corpus proceedings except in exceptional cases where the indication of injustice is compelling.

By the means mentioned a focused attention of the court and the parties to cases justifying presentation will, I believe, assure the more orderly, just and effective vindication and protection of constitutional rights. On the other hand, a disregard of minimal requirements would prove of little benefit in the long run to state prisoners having meritorious constitutional claims, because in many instances it would encourage detours from appropriate and permanently effective procedure. A trouble with the present system is that it not only permits but encourages insufficient applications which may prove a hindrance to the progress of a case at all stages, trial and appellate.

Assistance available at the prison when requirements have been understood has proved remarkably adequate to properly present meritorious cases in the first instance even without the intervention of trained attorneys. And increasingly members of the bar and bar organizations even without court appointment are making legal services available there. Where there is an indication that these means are ineffective to permit proper application by anyone desiring to be heard, I shall continue to be hospitable to informal applications. Furthermore, it shall continue to be my practice where an evidentiary hearing appears necessary or desirable from the face of the application to appoint counsel upon request or upon my own motion.

But despite liberality with which we may properly indulge informal applications for the Great Writ the provisions of the statute governing such applications may not be entirely disregarded. Among these statutory provisions are:

Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf. 28 U.S.C. § 2242.

It shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority if known. Ibid.

It may be amended or supplemented as provided in the rules of procedure applicable to civil actions. Ibid.

When after an evidentiary hearing on the merits of a material, factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States released from custody, or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ. 28 U.S.C. § 2244(b).

The Supreme Court, a justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution, or laws or treaties of the United States. 28 U.S.C. § 2254(a).

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner. 28 U.S.C. § 2254(b).

Especially since April 1, 1969, letters of the nature of those quoted above, as well as petitions, have been formally docketed, jacketed, assigned and treated as habeas corpus cases. During the past six months the pending civil cases of all types in the Central Division of this court have risen in number from 192 to 324. During the same period, monthly filings of civil cases have increased from in the neighborhood of 26 per month to a high of 89 in one month. That this increase is attributable largely to habeas corpus filings is indicated by the fact that these filings during the past six months have amounted to approximately 150 cases as compared with 111 cases in all other categories for the same period. Written memoranda, orders or decisions on all matters filed by me thus far during the current year are 114 in number—of these approximately 65% have dealt with habeas corpus matters. It is obvious despite the imperative that constitutional rights are protected through habeas corpus proceedings to the measure of our responsibility and to the full necessities of justice, yet it is also important that this process be rendered practical and reconciled with our other responsibilities.

Acting pursuant to the authority granted individual judges by Rule 83, Fed.R.Civ.Pro., Rule 57(b), Fed.R.Cr. Pro. in the absence of local rule, and in keeping with statutory limitations, and the purposes of the Great Writ, the following rules will be observed with reference to cases assigned to me:

(a) *In general.* Any person applying for a writ of habeas corpus shall furnish with the complaint a copy thereof for service by the clerk upon the party to whom the writ shall be addressed. Petitions may be informal when not prepared by counsel, but must comply with the requirements of 28 U.S.C. § 2254 by being verified; petitions must state specifically the means by which exhaustion of state remedies has been completed, and state facts, aside from mere legal conclusions, showing that petitioner's rights under the constitution or laws of the United States have been violated. Mere conclusions of law set forth in the complaint may be disregarded by the court. If a previous application

for a writ of habeas corpus has been made as to the same detention to this or any other court, that fact shall be set forth in the complaint together with any action taken upon such previous application.

(b) *Alleging exhaustion of state remedies.* If the complaint is made by or on behalf of a person held by any state officer, the reason that the complaint is presented to this court and not to a state court shall be specifically set forth and the exhaustion of state remedies and the manner thereof alleged.

(c) *Application by person other than party in custody.* If the application is not made and verified by the party in custody, the person making such application shall: verify the same on behalf of such party in custody; set forth in the complaint the reason that it is not made and verified by the party in custody; and state that he knows the facts set forth therein or, if the petition is based upon information and belief, the sources of his information.

(d) *Filing and service.* In all habeas corpus cases, the original complaint or application must be filed with the clerk, and in all cases on deportation or exclusion, in criminal proceedings, or where an official of the United States be respondent, a copy of the complaint must be served upon the United States Attorney. If the application is made by or on behalf of a state prisoner a copy of the complaint shall be served upon the Attorney General of the State.

(e) *Requests for leave to proceed in forma pauperis.* If the complaint is submitted with a request for leave to file in forma pauperis, before such filing the case shall be presented by the clerk to the Chief Judge for a ruling upon such request. If disallowed, the case will be lodged in the clerk's records but not filed; if allowed, it will be filed and assigned in due course pursuant to the Judicial Council order.

(f) *Witness fees in forma pauperis cases.* Where a petitioner is authorized to proceed in forma pauperis and considers it necessary tò ,compel the attendance of witnesses in his behalf, application shall be made stating the necessity and nature of the testimony, and the court may thereupon authorize the subpoenaing of witnesses at the expense of the government.

(g) *Response from state.* The state shall file an answer or return and in connection therewith shall submit any state court record by which it is contended that the detention is valid under 28 U.S.C. § 2254 within ten days after service of the petition has been made or within such extended time as the court may allow.

(h) *Summary ruling or hearing.* I shall either rule summarily upon an application assigned to me or set the case down for hearing after notice upon an order to show cause if an evidentiary hearing is deemed required.

(i) *Petitions not complying with this rule.* Upon assignment of a petition not complying with this rule, whether or not leave to proceed in forma pauperis has been granted, I shall direct or have the Clerk of Court direct the prisoner's attention to the requirements of these rules, furnish him with a copy thereof, and authorize him to file an amended petition in conformity herewith.

(j) *Waiver.* The court under meritorious circumstances and in its discretion may waive any requirement of formality in the application or its service in the interest of justice.

While it may be that the detailed mimeographed forms which a number of courts require applicants to complete pursuant to suggestion of the Committee on Habeas Corpus of the Judicial Conference of the United States would permit more precise indication of the grounds of the application in the first instance, I have concluded that the foregoing more simple and elastic requirements are adequate for the present and pending the

time the judges of the court can agree upon a rule.

■ The letters from the respective petitioners in the above-entitled cases are deemed insufficient to invoke any duty or power of the court to grant a writ of habeas corpus or to warrant the issuance of an order to show cause why such writs should not be granted. Nor do I think they would justify any general inquisitorial or investigative proceedings here. In my opinion to hold otherwise would have no legal sanction, would not be in harmony with the federal habeas corpus statute and violate principles of comity and separation of powers in our federal system.

Treated as applications for writs of habeas corpus, the letters of the respective petitioners are denied and dismissed without prejudice to the filing of applications in harmony with the rules above stated.